**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

**TOWANDA WILLIAMS** **PLAINTIFF**

**v.** **NO. 2:25-CV-00201-LPR**

**CHIEF KEITH FINCH, Individually and in his Official Capacity; OFFICER NATHAN DONALDSON, Individually and in his Official Capacity; OFFICER RAY DON FINLEY, Individually and In his Official Capacity; and THE CITY OF DUMAS, ARKANSAS** **DEFENDANTS**

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**ARGUMENT**

Plaintiff, Towanda D. Williams, filed suit under 42 U.S.C. § 1983, the Arkansas Civil Rights Act,[1] and Arkansas common law alleging that Defendants Finch, Findley,[2] Donaldson, and the City of Dumas violated her Fourth and Fourteenth Amendment rights; that Defendants violated her civil rights guaranteed by the Arkansas State Constitution; and that Defendants converted Plaintiff's personal property and aided and abetted felony theft of her personal property. Specifically, Plaintiff alleges that (1) Findley and Donaldson seized personal property belonging to her in an unreasonable fashion; that (2) they deprived her of a tangible thing in which she had an exclusive property interest without due process of law; that (3) they converted

[1] Plaintiff has alleged the Arkansas Constitution equivalents of the Fourth and Fourteenth Amendments. [ECF Doc. 2, ¶ 28] Because "[t]he Arkansas Civil Rights Act (ACRA) is generally treated as coextensive with 42 U.S.C. § 1983 and analyzed under federal standards," much of the analysis below will rely on federal case law. *Arnold v. McClinton*, 112 F.4th 598, 605 (8th Cir. 2024); *see Muntaqim v. Payne*, 2021 Ark. 162, 5, 628 S.W.3d 629, 635.

[2] Incorrectly named in the Complaint as "Finley."

her property and aided and abetted Melvin Smith's felonious theft of the same property; and that (4) the Separate Defendant, Chief Finch, Finley and Donaldson's supervisor, failed to train and/or supervise in a manner constituting deliberate indifference.

## I. SEPARATE DEFENDANT, CHIEF KEITH FINCH, SHOULD BE DISMISSED

There is no failure to train or supervise claim asserted against the Separate Defendant, Keith Finch, individually. The only claim is that he participated in all of the same acts as the Separate Defendants, Officer Findley and Donaldson. There is, however, no evidence that he did so. The only evidence is that he was not present during the incident on December 7, 2023. [SUMF, ¶ 45] Section 1983 liability is personal, meaning that a plaintiff must demonstrate that *each* defendant violated plaintiff's constitutional rights. *Jones v. City of St. Louis*, 104 F.4th 1043, 1050 (8th Cir. 2024); *Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir. 2005). Consequently, the Separate Defendant, Keith Finch, should be dismissed outright concerning all of Plaintiff's claims.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FOURTH AMENDMENT CLAIM AND ITS ARKANSAS CONSTITUTIONAL EQUIVALENT BECAUSE DEFENDANTS' ACTIONS DID NOT VIOLATE CLEARLY ESTABLISHED LAW BASED UPON THE UNIQUE FACTS OF THIS CASE

Plaintiff alleges unlawful seizure of her personal property without a warrant, court order, or legal justification in violation of the Fourth Amendment. [ECF Doc. 2, Complaint ¶ 21]. While Defendants recognize that the Fourth Amendment prohibits a meaningful interference with even a disputed possessory interest in property without a warrant or a court order,[3] the

[3] *Dixon v. Lowery*, 302 F.3d 857, 864 (8th Cir. 2002).

unique factual circumstances of this case, in light of clearly established law, or the lack thereof, entitle the individually named Defendants to qualified immunity.

**A. No government official would have been on notice that he was seizing property in which Plaintiff had a possessory interest based on the information given to Officers Findley and Donaldson on December 7, 2023.**

**i. The death certificate, the assignment of title, and bill of sale after death.**

"For [a plaintiff] to establish a § 1983 claim for a Fourth Amendment violation, [s]he must demonstrate a search or seizure occurred, and the search or seizure was unreasonable." *Clark v. Clark*, 926 F.3d 972, 977 (8th Cir. 2019). When a plaintiff brings a Fourth Amendment § 1983 claim against a law enforcement officer, "th[is] claim[ is] subject to 'a qualified-immunity defense . . . if: . . . the law at the time did not clearly establish the right.'" *Cartia v. Beeman*, 122 F.4th 1036, 1041 (8th Cir. 2024). Similarly, "[q]ualified immunity attaches when an official's conduct '""does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'""" *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (citations omitted). The recent case of *Zorn v. Linton* is instructive concerning the level of specificity the Supreme Court requires in order to find that a right is clearly established.

> To find that a right is clearly established, courts generally need to identify a case where an officer acting under similar circumstances was held to have violated the Constitution. The relevant precedent must define the right with a high degree of specificity, so that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Principles stated generally, such as that an officer may not use unreasonable and excessive force, do not suffice. **In short, officers receive qualified immunity unless they could have read the relevant precedent beforehand and known that it proscribed their specific conduct.**

*Zorn v. Linton*, 607 U.S. 568, 572 (2026) (emphasis added) (quotations and citations omitted). The precedent that puts officers on notice that their specific conduct violated the Fourth

Amendment must be "'particularized' to the facts of the case," *White*, 580 U.S. at 79 (citations omitted). As will be discussed below, on the evening of December 7, 2023, the information presented to Officers Findley and Donaldson would not have put them on notice that they were depriving Plaintiff of a property interest in the 2013 Hyundai.

As set out in the Defendants' Statement of Undisputed Material Facts, when Officers Findley and Donaldson met Melvin Smith on the evening in question, Melvin presented them with a copy of his deceased father's death certificate showing that his father died on August 5, 2023. [SUMF ¶¶ 13, 17] He also presented them with a copy of the title to the 2013 Hyundai that his father had owned. The title showed that it had been transferred to Plaintiff via a handwritten bill of sale on the title purportedly signed by Johnny Smith on August 6, 2023, the day after he died for the sum of $10.00. [SUMF ¶¶ 16-17] When confronted with that information, Plaintiff claimed that someone at the revenue office told her to fill out the bill of sale in the manner that she did. [SUMF ¶¶ 25-26, 33] Officers Findley and Donaldson did not subjectively believe her and, more importantly, there is no established Arkansas law that allows the conveyance of the title to a vehicle by a dead person in the manner shown to the officers on the scene on December 7, 2023. [SUMF ¶ 43] Arkansas law requires that, for a transfer of a vehicle title to be effective, "The owner shall endorse an assignment and warranty of title upon the certificate of title for the vehicle, **and he or she shall deliver the certificate of title to the purchaser or transferee at the time of delivery of the vehicle**, except as provided in §§ 27-14-906 and 27-14-909."[4] Ark. Code Ann. § 27-14-902(d). There is no possible way that an owner of a vehicle can endorse an assignment and warranty of title upon the certificate of title for the vehicle and deliver the certificate of title to the transferee on the day after the owner has died.

---

[4] Plaintiff has not made a claim that the provisions of Ark. Code Ann. §§ 27-14-906 or 909 apply.

Additionally, even if the clerk at the revenue office actually told Plaintiff to sign her father's name to the assignment of title and bill of sale after he was dead, there is no provision in the statute authorizing such procedure. Thus, any alleged statements by the clerk at the revenue office are irrelevant and would not put Officers Findley and Donaldson on notice of any possessory interest by Plaintiff. Any reasonable officer viewing the alleged conveyance of title presented on December 7, 2023, would believe that it was null and void and of no effect.

Plaintiff will undoubtedly point out that she told the officers and others at the scene that she had a bill of sale from March of 2023, however, on the evening of December 7, 2023, that document was never produced to Officers Findley and Donaldson. In situations that "concern[] the defense of qualified immunity, . . . the Court considers only the facts that were knowable to the defendant officers" at the time they acted. *White*, 580 U.S. at 76–77. Moreover, even if it had been produced, it would not explain why the transfer of title had not taken place long before the death of Johnny Smith, Sr. and there is no provision in the law for the transfer indicated on the title to have been accomplished by the forged signature of a dead person. When the Plaintiff's claim of an unreasonable seizure is based upon her own failure to properly secure indicia of ownership in the manner prescribed by law on the property claimed to be hers, the grant of qualified immunity to the Defendant Officers is wholly correct. Arkansas courts rely on the analysis used for qualified-immunity claims in federal civil-rights actions. *Graham v. Cawthorn*, 2013 Ark. 160, 16, 427 S.W.3d 34, 46 (citing *Fegans v. Norris*, 351 Ark. 200, 89 S.W.3d 919 (2002)). Therefore, qualified immunity should also be granted on Plaintiff's claim of a violation of the Arkansas equivalent of the Fourth Amendment.

**ii. The Affidavit of Collection of Small Estate by Distributees.**

In addition to the aforementioned death certificate and title, Melvin Smith also presented Officers Findley and Donaldson with an Affidavit of Collection of Small Estate by Distributees

filed in the Desha County Circuit Court that listed himself and not Plaintiff as an heir of the deceased Mr. Smith. Additionally, the Affidavit stated:

> That upon the Honorable Clerk of the Court filing this cause, any and all government entities, banking institutes, financial institutes, loan institutes, and the like shall aid Petitioners in collecting the assets belonging to the Decedent or for which the Decedent had an interest in at the time of his demise; AND any and all law enforcement agencies are directed to aid Petitioners in procuring the collection of the foregoing properties for which were owned by the Decedent or for which the Decedent had an interest therein.

[SUMF ¶ 20]

Admittedly, the Affidavit of Collection of Small Estate by Distributees is not a warrant or a court order, but the language therein is unequivocal that "law enforcement agencies are directed to aid Petitioners in procuring the collection of the foregoing properties for which were owned by the Decedent or for which the Decedent had an interest therein." The Arkansas law allowing for the collection of small estates by distributees, Ark. Code Ann. § 28-41-101, does not explicitly allow or disallow the language used in the Affidavit at issue in this case. Ark. Code Ann. § 28-41-101 does state, however, that after an affidavit comporting with that statute has been filed, "The distributee of an estate may **collect** and distribute the assets of an estate under this section without the appointment of a personal representative when . . . A copy of the affidavit certified by the clerk is furnished to any person owing any money, **having custody of any property**, or acting as registrar or transfer agent of any evidence of interest, indebtedness, property, or right. Ark. Code Ann. § 28-41-101 (a)(1), (E) (emphasis added). Given the language of § 28-41-101, the fact that neither it nor any case has disallowed the language in the Affidavit filed by attorney Priscilla Copelin-Neeley, and that § 28-41-101 has not been declared unconstitutional, the Affidavit presented by Melvin Smith, in combination with the death certificate and the improperly executed assignment of title and bill of sale would not put all

reasonable government officials on notice that it was a violation of the Fourth Amendment to assist him in collecting the 2013 Hyundai.

Furthermore, after a diligent search, Defendants have been unable to find any case that resembles the circumstances that faced them on December 7, 2023, with sufficient particularity to put them on notice that by exercising their discretionary authority to assist Melvin Smith in taking possession of the vehicle, they were violating the Fourth Amendment. Consequently, they are entitled to qualified immunity on Plaintiff's Fourth Amendment claim.

## III. SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S CLAIMS OF CONVERSION AND AIDING AND ABETTING THEFT

The elements of the tort of conversion are:

> Conversion is a common-law tort action for the wrongful possession or disposition of another's property. *McQuillan v. Mercedes–Benz Credit Corp.*, 331 Ark. 242, 961 S.W.2d 729 (1998). The tort of conversion is committed when a party wrongfully commits a distinct act of dominion over the property of another which is inconsistent with the owner's rights. *Dillard v. Wade*, 74 Ark. App. 38, 45 S.W.3d 848 (2001). The property interest may be shown by a possession or a present right to possession when the defendant cannot show a better right, since possession carries with it a presumption of ownership. *Big A Warehouse Dist. v. Rye Auto Supply*, 19 Ark. App. 286, 719 S.W.2d 716 (1986). The intent required is not conscious wrongdoing but rather an intent to exercise dominion or control over the goods that is in fact inconsistent with the plaintiff's rights. *Grayson v. Bank of Little Rock*, 334 Ark. 180, 971 S.W.2d 788 (1998); *Tackett v. McDonald's Corp.*, 68 Ark.App. 41, 3 S.W.3d 340 (1999). The conversion need not be a manual taking or for the defendant's use. *Big A Warehouse Dist. v. Rye Auto Supply, supra*.

*Buck v. Gillham*, 80 Ark. App. 375, 379, 96 S.W.3d 750, 753 (2003).

In the State of Arkansas, theft of property is defined as:

> (a) A person commits theft of property if he or she knowingly:

> (1) Takes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of depriving the owner of the property; or
>
> (2) Obtains the property of another person by deception or by threat with the purpose of depriving the owner of the property.

Ark. Code Ann. § 5-36-103.

For the reasons set out in Section II of this Brief, Officers Findley and Donaldson could not have known that any action that they were taking on December 7, 2023, deprived Plaintiff of the use of her property. The only information given to them at that time was that Johnny Smith, Sr. died on August 5, 2023, and that the Plaintiff, by her own hand, purported to convey title to the 2013 Hyundai to herself on August 6, 2023, by signing her deceased father's name on the assignment of title and bill of sale. Under those circumstances it cannot be said that Officers Findley and Donaldson could have been aware that they were knowingly or intentionally depriving Plaintiff of her rights in the vehicle or exercising unauthorized dominion or control over it. Additionally, Arkansas courts have applied the doctrine of qualified immunity to statutory causes of action and intentional torts. *Brinkley v. Beene*, 2026 Ark. App. 165, 5, 732 S.W.3d 452, 455 (2026); *Sullivan v. Coney*, 2013 Ark. 222, 5, 427 S.W.3d 682, 685 (2013).

Although it was not in the context of the tort of conversion, the court in the *Brinkley* case, *supra*, defined the intentional conduct necessary to overcome qualified immunity regarding the tort of trespass. There that court reasoned that:

> Turning to trespass, we have held that although the tort of trespass may be categorized as an "intentional" tort, an analysis of the application of qualified immunity does not stop with that determination. [*Williams v. Pate*, 2015 Ark. App. 327, 463 S.W.3d 734.] Simply because an actor's conduct satisfies the type of intent necessary to establish the tort of trespass, it does not follow that the same conduct is necessarily an intentional act that bars application of the doctrine of qualified immunity. *Id*. It is a deliberate, knowing trespass that bars application of the doctrine of qualified immunity. *Id*.

*Brinkley*, 2026 Ark. App. at 5, 732 S.W.3d at 455.

This Court should equally apply the *Brinkley* reasoning to the Separate Defendants' assertion of qualified immunity for the Plaintiff's claims of conversion and aiding and abetting theft. Only if Plaintiff can come forward with proof that Officers Findley and Donaldson deliberately and knowingly deprived Plaintiff of a meaningful interest in the 2013 Hyundai should they be denied qualified immunity on those claims. She cannot do so and, therefore, those claims should be dismissed.

## IV. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FOURTEENTH AMENDMENT CLAIM BECAUSE PLAINTIFF'S DUE PROCESS RIGHTS ARE SATISFIED BY POST DEPRIVATION STATE TORT REMEDIES

Ms. Williams claims that Defendants deprived her of property without due process of law, including notice and opportunity to be heard. [ECF Doc. 2, Complaint ¶ 24]. There is no evidence that any policy making official for the City of Dumas either participated in the incident on December 7, 2023, incident involving Officers Findley and Donaldson, was aware of it when it was occurring, or at any time sought to deprive Plaintiff of any possessory interest she may have or have had in the 2013 Hyundai. Assuming Plaintiff had her property seized, the seizure of her property, therefore, falls into the category of "random and unauthorized seizures" rather than a loss that is the result of some established state procedure. *See Parratt v. Taylor*, 451 U.S. 527 (1981), and *Hudson v. Palmer*, 468 U.S. 517 (1984). In those situations where the State cannot predict precisely when the loss will occur, it has been held that adequate post deprivation state law tort remedies are all the process that is due the aggrieved party. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The Eighth Circuit has applied *Parratt* and *Hudson* to dispose of due process §1983 claims against police officers on at least two occasions. *See Putman v. Unknown Smith*, 98

F.3d 1093 (8th Cir. 1996) (upholding dismissal a due process claim against police officers who seized a plaintiff's personal property), and *Reese v. Kennedy*, 865 F.2d 186 (8th Cir. 1989) (upholding dismissal of a due process claim where officers failed to follow department policy on a *Parratt*/*Hudson* theory). Plaintiff has available to her the state law tort of conversion as a remedy and she has, indeed, asserted that claim in this cause. For this reason, Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment due process claim. The Defendants are also entitled to qualified immunity on Plaintiff's claim of a violation of the Arkansas constitution equivalent of the Fourteenth Amendment. *Graham, supra.*

## V. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S MONELL LIABILITY CLAIM

Plaintiff claims that the City of Dumas failed to train and supervise its officers on proper procedures for property disputes, warrantless seizures, and due process protections and that this failure constituted deliberate indifference to the constitutional rights of citizens. [ECF Doc. 2, Complaint ¶ 26, 27]. For the reasons stated hereinafter, Plaintiff's *Monell* liability claim fails, and Defendants are entitled to summary judgment as a matter of law.

"Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' . . . ; (2) an unofficial 'custom,' . . . ; or (3) a deliberately indifferent failure to train or supervise . . . ." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013) (Citations omitted). Plaintiff can point to no official policy of the City that required officers to deprive her of her property in violation of her constitutional rights.

"Under § 1983, 'a claim for failure to supervise requires the same analysis as a claim for failure to train.' . . . Neither claim can succeed without evidence the municipality '[r]eceived notice of a pattern of unconstitutional acts committed by [its employees].'" *Id*. at 1216-17. Ms.

Williams has no evidence that any policy making official of the City of Dumas was on notice that any of its police officers, let alone Findley or Donaldson, had a habit of committing unconstitutional acts, specifically the unconstitutional deprivation of citizen's property. Furthermore, "bare allegation that 'the absence of a binding, written policy . . . demonstrated deliberate indifference on the part of the City' is patently insufficient. . . . [A] municipality may not be held liable under § 1983 merely because it 'failed to implement a policy that would have prevented an unconstitutional act by an employee otherwise left to his own discretion.'" *Id.* at 1216. Consequently, Ms. Williams has produced no evidence that would be necessary to bring and maintain a claim based on *Monell* liability.

## CONCLUSION

For the reasons stated above, Defendants are entitled to summary judgment on all of Ms. Williams' claims and pray that this Court grant their motion for Summary Judgment.

Respectfully submitted,

Keith Finch, Nathan Donaldson, Ray Don Findley, and The City of Dumas, Arkansas
**DEFENDANTS**

M. Keith Wren, #94107
Attorney for Defendants
P.O. Box 38
North Little Rock, AR 72115
Phone: (501) 374-3484, ext. 163
E-mail: mkwren@arml.org